# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>ALEX KELLUM,<br><br>        Defendant. | 8:18CR183<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

This matter is before the Court for Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 23(c), following a nonjury trial held on December 11, 2019. At trial, the United States was represented by Matt E. Lierman. The Defendant, Alex Kellum, was represented by Chinedu Igbokwe.

## SUPERSEDING INDICTMENT

The Superseding Indictment charges Kellum with three counts of violating 21 U.S.C. §§ 841(a)(1), (b)(1). It alleges that on or about September 6, 2017; December 20, 2017; and April 27, 2018, in the District of Nebraska, Defendant Alex Kellum did knowingly and intentionally distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base (*i.e.*, "crack cocaine"), a Schedule II controlled substance. Each count alleges that, before Kellum committed the offense, he had a final conviction for a serious drug felony, namely, a conviction under 21 U.S.C. §§ 841(a)(1) & (b)(1), for which he served more than 12 months of imprisonment and for which he was released from imprisonment related to that offense within 15 years of the commencement of the current offense. Kellum pleaded not guilty to the charges.

## FINDINGS OF FACT

The Court makes the following findings of fact. Any finding of fact that is more properly considered a conclusion of law should be deemed as such. Unless otherwise indicated, all findings of fact relate to the time relevant to the facts alleged in the Superseding Indictment.

**Stipulated Facts**

The parties entered into the following stipulations which are deemed proven and uncontroverted. Gov't Exs. 20–21.

1. In connection with this case, suspected controlled substances were sent to the Douglas County Sheriff's Office Laboratory and Nebraska Public Service Laboratory so that the substances could be weighed and tested to determine their chemical composition.

2. Forensic chemists at the laboratory weighed and analyzed the substances sent to them in this case. The tests and analyses they performed are generally accepted within the field of forensic chemistry.

3. Based on the laboratory testing, the parties agree as follows:

    a. Exhibit 1 contains 27.7 grams and 27.9 grams of cocaine base (crack cocaine)

    b. Exhibit 2 contains 55.3 grams of cocaine base (crack cocaine)

    c. Exhibit 3 contains 54.423 grams of cocaine base (crack cocaine)

4. Kellum was previously convicted of Possession with Intent to Distribute more than 5 grams but less than 50 grams of crack cocaine in the District of Nebraska.

5. Kellum was arrested on or about January 17, 2003, and sentenced on or about August 27, 2003, for the offense described in paragraph 4.

6. Kellum was sentenced to a term of imprisonment of 70 months incarceration on or about August 27, 2003, for the offense described in paragraph 4.

7. Kellum served a term of imprisonment of more than 12 months for the offense described in paragraph 4, specifically, Kellum's sentence was imposed on or about August 27, 2003; he was committed to the Bureau of Prisons–FCI Greenville on or about October 9, 2003; and released on or about December 4, 2007.

**Trial Testimony and Evidence**

8. James Patrick Paul is a retired police officer and detective from the Omaha Police Department.

9. Detective Paul was cross-deputized as a federal task force officer with the Greater Omaha Safe Streets Task Force (Task Force) of the Federal Bureau of Investigation (FBI).

10. In the Spring of 2017, in his role with the Task Force, Detective Paul used a cooperating source to make controlled purchases of crack cocaine from Theodore Relford.

11. In August 2017, Detective Paul interviewed Relford. In this interview, Relford gave Detective Paul information regarding two individuals allegedly involved in narcotics distribution. These individuals were Defendant Alex Kellum, known by the alias "A.D.," and Thomas Lewis, known by the alias "Cable Man."

12. Relford agreed to work initially as a confidential informant and later as a cooperating source for Detective Paul in order to obtain beneficial treatment regarding potential narcotics charges arising from the controlled purchases.

13. As a confidential informant and cooperating source, Relford agreed to make controlled purchases from Kellum.

14. On September 6, 2017, Detective Paul gave Relford instructions to contact Kellum and set up a meeting to purchase two ounces of crack cocaine later that day.

15. Relford called Kellum and set up the meeting for 6:00 p.m. that day.

16. Relford met with Detective Paul and the Task Force surveillance team before 6:00 p.m. at a neutral location.

17. Detective Paul searched Relford and Relford's car for contraband.

18. No contraband was found and any money that Relford had was taken from him for the duration of the controlled purchase.

19. Relford was equipped with multiple forms of audio and video surveillance equipment. He was not given the ability to begin or end the recording of any of the devices.

20. Relford was provided with $2,200 in accounted government funds and instructed to use it to purchase two ounces of crack cocaine from Kellum.

21. Relford left the neutral location and drove directly to Kellum's residence.

22. Relford entered Kellum's residence around 7:00 p.m. and placed the $2,200 in front of Kellum. Kellum then picked up a plastic bag with 55.6 grams of crack

cocaine in it[1] and placed in in front of Relford. Relford weighed the bag of crack cocaine and left Kellum's residence while still in possession of the crack cocaine.

23. Upon leaving Kellum's property, Relford believed he was being followed by someone who was at Kellum's residence. Detective Paul instructed Relford to drive through neighborhoods until the car was no longer behind him. Relford did so without making any stops or leaving his vehicle.

24. Relford then drove back to the neutral location and immediately handed the plastic bag of crack cocaine to Detective Paul.

25. The surveillance team removed the recording devices from Relford and turned them off.

26. On December 19, 2017, Detective Paul instructed Relford to contact Kellum and set up a meeting to purchase crack cocaine.

27. Relford called Kellum and the two agreed to a sale of two ounces of crack cocaine to take place on December 20, 2017.

28. Relford met with Detective Paul and the Task Force surveillance team at the neutral location prior to 5:00 p.m. on December 20, 2017.

29. Detective Paul searched Relford and Relford's car for contraband.

30. No contraband was found and any money that Relford had was taken from him for the duration of the controlled purchase.

---

[1] This is the bag of crack cocaine marked as Exhibit 1. *See supra* ¶¶ 1–3.

31. Relford was equipped with multiple forms of audio and video surveillance equipment. He was not given the ability to begin or end the recording of any of the devices.

32. Relford was provided with another $2,200 in accounted government funds and instructed to use it to purchase two ounces of crack cocaine from Kellum.

33. Relford entered Kellum's residence around 5:40 p.m. Kellum dropped plastic bags of crack cocaine[2] weighing 55.3 grams in front of Relford, Relford gave the money to Kellum and left Kellum's residence with the crack cocaine.

34. Relford drove directly to the neutral location and immediately handed the crack cocaine to Detective Paul.

35. The surveillance team removed the recording devices from Relford and turned them off.

36. On April 25 or 26, 2018, Detective Paul instructed Relford to contact Kellum to set up a sale of crack cocaine.

37. Relford called Kellum and the two agreed to a sale of two ounces of crack cocaine to take place later that evening. However, the transaction was delayed and Relford and Kellum agreed to meet at a convenience store at 11:30 a.m. on April 27, 2018.

38. Relford met with Detective Paul and the Task Force surveillance team once more at the neutral location prior to 11:30 a.m. on April 27, 2018.

39. Detective Paul searched Relford and Relford's car for contraband.

---

[2] This is the crack cocaine marked as Exhibit 2. *See supra* ¶¶ 1–3.

40. No contraband was found and any money that Relford had was taken from him for the duration of the controlled purchase.
41. Relford was equipped with multiple forms of audio and video surveillance equipment. He was not given the ability to begin or end the recording of any of the devices.
42. Relford was provided with another $2,200 in accounted government funds and instructed to use it to purchase two ounces of crack cocaine from Kellum.
43. Relford then drove to the convenience store where he waited in his car for Kellum.
44. John E. Stuck is a detective with the Bellevue Police Department and is a Task Force officer.
45. In his role as a Task Force officer, Detective Stuck surveilled Relford during the April 27, 2018, transaction and relayed all that he observed to the rest of the Task Force.
46. Kellum arrived in a vehicle driven by Beverly Marks Williams. Kellum exited the passenger's side of the vehicle, walked to the passenger's side of Relford's vehicle, and gave Relford 54.423 grams of crack cocaine[3] in exchange for the $2,200.
47. Relford drove directly back to the neutral location and handed the crack cocaine to a Task Force officer.
48. The surveillance team removed the recording devices from Relford and turned them off.

---

[3] This is the crack cocaine marked as Exhibit 3. *See supra* ¶¶ 1–3.

**ELEMENTS**

The crime of distribution of a mixture or substance containing a detectable amount of cocaine base (*i.e.* "crack cocaine), a Schedule II substance, as charged in Counts I, II, and III of the Superseding Indictment, has two elements, which are:

*One*, the defendant intentionally transferred crack cocaine to Theodore Relford;

*Two*, at the time of the transfer, the defendant knew that it was crack cocaine. [4]

Although the crime has only two elements, any factor that increases the minimum or maximum penalty for a crime must be alleged and proved by the Government beyond a reasonable doubt.[5] Pursuant to 21 U.S.C. § 841(b)(1)(B), the following enhancements have been alleged by the Government in the Superseding Indictment:

*Three,* the quantity of crack cocaine transferred was 28 grams or more of a mixture or substance containing a detectable amount of crack cocaine;

*Four*, the defendant had a final conviction for a serious drug felony[6] for which he served more than 12 months of imprisonment;

*Five*, the defendant was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

**BURDEN OF PROOF**

The Government bears the burden of proving, beyond a reasonable doubt, each essential element of the crime charged.

---

[4] Model Crim. Jury Instr. 8th Cir. 6.21.841B (2017).
[5] *See Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).
[6] 21 U.S.C. § 841(b)(1)(B). As defined by 21 U.S.C. § 802(57), and 18 U.S.C. § 942(e)(2), a prior conviction for a serious drug felony is an offense under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, 46 U.S.C. ch. 705, or State law crimes involving manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance, for which a maximum term of imprisonment of ten years or more is prescribed by law, for which the defendant served a term of imprisonment of more than 12 months, and the defendant's release from imprisonment was within 15 years of the instant offense.

**CONCLUSIONS OF LAW**

The Court finds the Defendant, Alex Kellum, is guilty of Counts I, II, and III of the Superseding Indictment. The Government has proved each element of the offense beyond a reasonable doubt.

The required enhancement findings are undisputed. The parties have stipulated that the quantity of the mixture or substance containing a detectable amount of crack cocaine in each of Exhibits 1, 2, and 3 is greater than 28 grams. Gov't Ex. 20. The parties also have stipulated that Kellum was previously convicted of possession with intent to distribute more than 5 but less than 50 grams of crack cocaine, that Kellum served a term of imprisonment of more than 12 months, and that Kellum was released from his imprisonment on or about December 4, 2007. Finally, the Court took judicial notice of 21 U.S.C. § 841(a)(1), (b)(1) as it existed in 2003. Kellum's conviction under that statute as it existed in 2003 was a final conviction for a serious drug felony for which he served a term of imprisonment of more than 12 months and was released within 15 years of the commencement of the instant offense.

The Court finds the Government's witnesses and evidence to be credible. On September 6, 2017; December 20, 2017; and April 27, 2018, Kellum intentionally transferred crack cocaine to Relford.

At the time of each transfer, Kellum knew that what he was transferring to Relford was crack cocaine. Relford contacted Kellum prior to their meetings and informed Kellum that the purpose of their meeting was to effectuate a sale of crack cocaine. At each meeting, Relford gave Kellum cash in the amount of the street value of two ounces of

crack cocaine. In return, at each meeting Kellum gave Relford two ounces of crack cocaine.

The Government has met its burden of proving each element beyond a reasonable doubt. Accordingly,

IT IS ORDERED:

1. The Defendant, Alex Kellum, is guilty of Counts I, II, and III of the Superseding Indictment;

2. A separate Order on Sentencing Schedule will be issued; and

3. Judgment will be entered accordingly.

Dated this 31st day of December, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge