IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ALEX KELLUM,<br><br>　　　　　Defendant. | 8:18CR183<br><br>MEMORANDUM AND ORDER |

　　　　This matter is before the Court on defendant's motion for compassionate release. Filing Nos. 128 (motion) and 145 (brief), pursuant to 18 U.S.C. § 3582(c)(1)(A). The defendant is represented by the Federal Public Defendant's Office. The government filed a brief in opposition to this motion.  Filing No. 142.  The United States Probation Office has filed an investigation report and has reviewed the plan of home detention.  Filing No. 138.  Defendant requests that this Court release him to serve his remaining term and years of supervised release at home.

　　　　Defendant was found guilty of distribution of crack cocaine in violation of 21 U.S.C.A. § 841(a)(1) and (b)(1), on Counts I, II, and III of the Superseding Indictment after a plea of not guilty on December 31, 2019.  He received a sentence of 120 months imprisonment plus 8 years of supervised release.

　　**DISCUSSION**

　　　　The First Step Act amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration.  Cong. Research

1

Serv., R45558, The First Step Act of 2018: An Overview 1 (2019). Congress designed the provision at issue here, 18 U.S.C.A. § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release." § 603(b), 132 Stat. at 5239. Section 3582(c)(1)(A) allows defendants, for the first time, to petition district courts directly for compassionate release. *Id.* Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early. § 3582(c)(1)(A)(i). Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a defendant may (after exhausting his or her administrative remedies) move for reduction of his or her term of imprisonment based upon "extraordinary and compelling reasons." The Court, after considering the factors enumerated in 18 U.S.C.A. § 3553(a)[1], may grant the motion if extraordinary and compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, an initial review of the defendant's claim will involve these inquiries:

1. Has the defendant exhausted administrative remedies?

2. Has the defendant identified extraordinary and compelling reasons for reducing his or her term of imprisonment?

---

[1] The statute states: (1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; . . .
***** and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C.A. § 3582(c)(1)(A).

    3.    Would application of the § 3553(a) factors permit reducing the defendant's sentence if those extraordinary and compelling reasons were substantiated?

    4.    Ensure that any reduction is consistent with applicable policy statements.

18 U.S.C.A. § 3582(c)(1)(A).

    *A. Exhaustion*

The Court finds that the defendant has met the exhaustion requirement. *See United States v. Brown*, 457 F. Supp. 3d 691 (S.D. Iowa 2020) ("Defendant satisfied the exhaustion requirement's text and purpose [when] [h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court."). Defendant in this case filed such a motion with the BOP, and the BOP denied his request. The Court finds that defendant has complied with the exhaustion requirement.

    *B. Medical Vulnerability*

COVID-19 continues to be a global pandemic that presents extraordinary and compelling release for certain prisoners. It is unprecedented. COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a compromised immune system, obesity, heart disease, hypertension, chronic lung disease, diabetes mellitus, and asthma. Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention (April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. However, the Court likewise notes that most prisoners now have the opportunity to get vaccinated, and in this case, the defendant has in fact been

vaccinated.

The defendant has a number of health risks. Defendant has congestive heart failure, cardiomyopathy, and he is obese. He may need a defibrillator at some point, and his heart only works at 27%. He goes on to note that he hasn't been able to access the chapel, have recreation time or work on his health, due to COVID-19 restrictions. He is on a number of medications. Since his incarceration in the BOP began, the defendant has been regularly tested and quarantined, and he has not contracted COVID-19. COVID-19 test results in 01/2021 and 09/2021 were negative. He was fully vaccinated in May 2021.

The Court believes the medical evidence establishes that defendant is at significantly higher risk for COVID-19 complications. He has a number of conditions that place him in the increased risk category. However, defendant has received his first and second COVID-19 vaccinations. FCI Oxford, where Kellum is currently incarcerated, has a total of 918 inmates at this facility, and currently, there are no COVID-19 positive staff members or inmates at this facility as of November 4, 2021. There have been no deaths; and 571 inmates and 85 staff have recovered from the COVID-19 virus. However, he is at the Oxford work camp, which has no nurse or medical staff present on site. It is a location that is not equipped for medical conditions such as those of the defendant's.

Dr. Steier, defendant's treating physician, prior to his arrest stated: "Due to underlying cardiac conditions such as Congestive Heart Failure and Cardiomyopathy, it is my professional medical opinion that Alex Kellum is at an increased risk for serious

4

complications if he develops COVID19."[2]

    C. Section 3553(a) Factors

In addition, the Court must consider if compassionate release comports with any applicable § 3553(a) factors. *See also* § 3582(c)(1)(A). When reviewing the § 3553(a) relevant factors, the balance of those factors does not support a sentence of home confinement. The Court has already established that defendant's health conditions place him at heightened risk for severe illness from COVID-19.

Defendant is 40 years old. If he is released, it appears he would attempt to work two jobs, which might actually increase his exposure to COVID-19 in Douglas County, Nebraska. He would reside with a family friend. The probation officer's report indicates, and the Court agrees, that if all conditions are met, this would be an acceptable placement for the defendant.

Despite pandemic restrictions, he has taken all the programming available, including a heart healthy class, a prediabetes class, an anger management class, parenting classes, criminal thinking. While he was at DCCC, he attended AA meetings and classes. Other kinds of therapy are very difficult during COVID-19. To date, Mr. Kellum has received no disciplinary sanctions or incident reports during his term of incarceration. He has submitted no positive drug tests. He has a job driving a van to and from the airport and train station.

However, defendant has a previous serious drug felony. He was found guilty after a bench trial and was not given acceptance of responsibility under the U.S. Sentencing Guidelines. Nevertheless, he received a below sentence guideline range at the statutory

---

[2] Exhibit 3, Letter from Dr. Steier.

5

minimum 120 months. He has been in continuous custody since July 19, 2018. His projected release date is January 24, 2027. Kellum personally distributed 421.3 grams of crack cocaine and 27.9 grams of powder cocaine from his residence on nine (9) separate occasions. Kellum distributed an additional 179.1 grams of crack cocaine at three (3) different locations, all of which were stored at Kellum's residence, according to law enforcement testimony. He has a significant criminal history in drug distributions incorporated with weapons offenses and gang affiliations. The Government also notes that nothing in the record shows that Kellum is rehabilitated.

The Court will deny the motion for compassionate release. While it is true that the Court has determined that his medical vulnerability is at an increased risk, the Court is unwilling to find that defendant is no longer is a threat to society. The Court believes that prison incarceration is necessary "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). The past conduct is indicative of risk to harm to others if he is released. Based on these findings, the Court finds that the § 3553(a) factors militate towards denying defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

For the reasons stated herein, defendant's Motion for compassionate release, Filing No. 128, is denied.

Dated this 4th day of January, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge